UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| LINDA MARIE COURTER A/K/A LINDA COURTER, | CIVIL COMPLAINT |
| Plaintiff, | |
| v. | CASE NO. |
| DORT FINANCIAL CREDIT UNION, | DEMAND FOR JURY TRIAL |
| Defendant. | |

## COMPLAINT

NOW comes LINDA MARIE COURTER A/K/A LINDA COURTER ("Plaintiff"), by and through her attorney, WAJDA & ASSOCIATES, PC ("Wajda"), complaining as to the conduct of DORT FINANCIAL CREDIT UNION, a financial institution based in Grand Blanc, Michigan, ("Defendant") as follows:

### NATURE OF THE ACTION

1. Plaintiff bring this action for damages pursuant to the Fair Debt Collections Practices Act, ("FDCPA") under 15 U.S.C. §1692 *et seq.,* and the Texas Debt Collection Practices Act, ("TDCP") pursuant to Texas Finance Code Chapter 392 *et seq.,* for Defendant's unlawful conduct.

### JURISDICTION AND VENUE

2. This action is brought pursuant to the FDCPA. Subject matter jurisdiction is conferred upon this Court by 15 U.S.C. §1692, 28 U.S.C. §§1331 and 1337, as the action arises under the laws of the United States. Supplemental jurisdiction exists for the state law claim pursuant to U.S.C. §1367.

3. Venue is proper in this Court pursuant to 28 U.S.C. §1391(b)(2) as a substantial portion of the events or omissions giving rise to the claims occurred within the Southern District of Texas.

## PARTIES

4. Plaintiff, Courter is an adult female consumer presently residing within Montgomery County, Texas, which is located within the Southern District of Texas.

5. Courter is a natural "person" as defined by 47 U.S.C. §153(39).

6. Defendant is a community based state-chartered credit union, claiming to offer comprehensive financial services to its members, who are residents of Michigan.

7. Defendant is regularly engages in the business of collection of debts and as the facts will indicate is a debt collector, who attempts to collect debts which were incurred prior to its state-issued charter.

8. Defendant is a "person" as defined by 47 U.S.C. §153(39).

9. Defendant acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, representatives and insurers at all times relevant to the instant action.

10. Plaintiff reserves the right to amend the Complaint should the identities of any complicit individuals become known at a later time.

## FACTS SUPPORTING CAUSES OF ACTION

11. The instant action arises out of Defendant's attempts to collect upon an outstanding consumer debt obligation ("subject consumer debt"), via illegal seizure of Plaintiff's CARES Act coronavirus stimulus check.

12. In November of 2012, Plaintiff, then a resident of the state of Michigan, opened a credit card account with Dort Federal Credit Union ("Dort Federal"), a federally-chartered credit union. In addition, she also took out a small personal loan with the same institution.

13. On May 28, 2013, Plaintiff filed for Chapter 7 bankruptcy protection in the United States Bankruptcy Court for the Eastern District of Michigan under docket number 13-31898. During the course of the bankruptcy case, on June 20, 2013, Plaintiff signed a reaffirmation agreement with Dort Federal for her outstanding loans. Plaintiff received an order of discharge from the bankruptcy court on August 20, 2013.

14. Subsequent to her bankruptcy filing, Plaintiff opened a checking account, took out an automobile loan, maintained a savings account and entered into a consolidation loan with Dort Federal.

15. In 2015, Plaintiff relocated from Michigan to Texas.

16. Effective January 1, 2020, Dort Federal changed from a federally-chartered credit union to a state-chartered credit union and changed its identity to Dort Financial Credit Union.

17. By changing its charter from federal to state, membership became "open to all people who live, work, worship or attend school in the State of Michigan."

18. By current federal statute, credit unions cannot serve the general public and people qualify for a credit union membership through their employer, organizational affiliations like churches or social groups, or a community-chartered credit union.

19. Plaintiff, while a member of the federal-chartered Dort Federal, by federal statute was not eligible for membership with the state-chartered Defendant as Plaintiff had not been a resident of the State of Michigan since 2015.

20. Regardless of her membership prohibitions with the Defendant institution, Plaintiff continued to maintain a savings account and checking account with Defendant and continued to make current payments on her auto loan now being serviced by Defendant.

21. In August of 2020, Plaintiff closed her checking account with Defendant.

22. Plaintiff also stopped paying on her credit card and consolidation loan she had with Dort Federal in August of 2020.

23. Beginning in October of 2020, Defendant began placing collection calls to Plaintiff's cell phone and started sending collection correspondence text messages and emails to her.

24. On December 27, 2020, the United States Congress enacted new legislation under the Coronavirus Response and Relief Supplemental Appropriations Act of 2021, whereby millions of Americans would receive a second stimulus relief payment in the amount of $600 due to the hardships caused by the ongoing pandemic.

24. On December 29, 2020, the Internal Revenue Service and the United States Treasury Department began delivering the $600 Economic Impact Payments to millions of Americans who received the first round of stimulus payments earlier in the year.

25. Because Plaintiff had her 2019 income tax refund directly deposited to her checking account at Defendant's institution, the IRS rules stated the stimulus check would be sent there.

26. Many states issued further laws ordering that CARES Act stimulus checks were exempt from a "banker's right of setoff" whereby a bank or credit union could seize money paid into a consumer's account to repay amounts owed to the bank. Other banks voluntarily stated it would help protect its customers and waive the right of setoff with regard to the stimulus checks. Unfortunately, Defendant was not one of those institutions.

27. However, federal law also prohibits a bank or credit union from exercising the right of setoff if the stimulus check is sent to a closed account. If a direct deposit of a stimulus check goes to a closed account at the bank, the bank has to return the funds to the US Treasury Department. The Treasury Department will then sent the consumer a paper check. The bank cannot seize the direct deposit on a closed account even if customer still owes payments to the bank. (*See C.F.R. § 210.4(a)(3)*).

28. On or about December 30, 2020, Plaintiff's stimulus check was sent for direct deposit to the closed checking account with the Defendant.

29. Instead of returning the check to the Treasury Department, Defendant reopened Plaintiff's closed checking account, applied a negative balance and seized the stimulus check.

30. Plaintiff contacted Defendant, whose representative acknowledged Defendant reopened the checking account with the negative balance and stated the check would be moved to a savings account and the checking account would be closed again.

31. Defendant did not close the checking account they reopened in violation of the law and still holds Plaintiff's stimulus check in violation of her consumer rights.

32. Defendant purposefully and willfully reopened the closed checking account with a negative balance so it could claim its banker's right of setoff, by now making it appear as if the checking account was a charged off account and not a closed account.

33. Defendant has seized relief funds, directed by the federal government to be issued to the Plaintiff to financially assist her in coping with the coronavirus pandemic, they were never legally entitled to take.

34. Plaintiff has been unlawfully deprived of her property, suffered needless embarrassment and has been assessed fees all as result of the Defendant's illegal actions.

35. Upon information and belief, Defendant at all times, had full knowledge its actions were improper.

36. Upon information and belief, Defendant purposefully, intentionally and wantonly violated Plaintiff's protected consumer rights.

37. Defendant's actions were intentional, and done with malice aforethought, as they deceived Plaintiff into believing Defendant was legally authorized to seize Plaintiff's federal issued relief funds.

38. Defendant's actions were deceptive, unfair, misleading, intentional, harmful and inappropriate.

39. Plaintiffs has suffered concrete harm as a result of Defendant's actions, including but not limited to, confusion and aggravation.

40. Defendant's unlawful, misleading and deceptive conduct materially impacted and shaped Plaintiffs' reactions and course of conduct in response to Defendant's collection efforts.

41. Plaintiff has suffered actual financial loss from the unlawful seizure her stimulus payment, including being assessed unnecessary fees and expending costs and assets in dealing with Defendant's conduct.

42. Plaintiff has also suffered mental anguish, pain and suffering as result of the Defendant's conduct.

43. Plaintiff has further been unnecessarily confused and concerned given Defendant's violations of law, and have further suffered a violation of her state and federally protected substantive interests as a result of Defendant's conduct.

44. Finally, Plaintiff believes Defendant's conduct and collection tactics are part of a scheme or practice to deceive and harm other consumers similarly situated as herself.

### COUNT I – VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT

45. Plaintiff repeats and alleges paragraphs 1 through 44 as though fully set forth herein.

46. Plaintiff is a "consumer" as defined by 15 U.S.C. §1692a(3) of the FDCPA.

47. Defendant is a "debt collector" as defined by §1692a(6) of the FDCPA, because it regularly uses the mail and/or the telephone to collect, or attempt to collect, delinquent consumer accounts.

48. Defendant, as part of its regular business, engages in the regular collection or attempt to collect, directly or indirectly, defaulted debts owed or due or asserted to be owed or due to others, (including its predecessor) and debt collection is a primary function of its business.

49. The subject debt is a "debt" as defined by FDCPA §1692a(5) as it arises out of a transaction due or asserted to be owed or due to another for personal, family, or household purposes.

### a. Violations of the FDCPA § 1692e and § 1692f

50. The FDCPA, pursuant to 15 U.S.C. §1692e, prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

51. In addition, this section enumerates specific violations such as, *"The false representation of – the character, amount, or legal status of any debt." 15 U.S.C.§1692e(2)(A)* or *"The use of any false representation or deceptive means to collect or attempt to collect any debtor to obtain information concerning a consumer." 15 U.S.C. §1692e(10).*

52. Further, pursuant to 15 U.S.C. §1692f, the FDCPA prohibits a debt collector from using any unfair or unconscionable means to collect or attempt to collect the alleged debt.

53. In addition, 15 U.S.C. §1692f(1) of the FDCPA prohibits a debt collector from attempting to collect any amount not authorized by the agreement creating the debt or permitted by law.

54. Defendant violated §§1692e, e(2)(A), e(10), f, and f(1) through its illegal reopening of Plaintiff's closed checking account in order to seize funds it had no legal authority to seize and by unfairly attempting to collect money it was not permitted to collect by law.

55. Defendant blatantly violated Plaintiff's statutorily provided rights and engaged in conduct in direct violation of the FDCPA per Fifth Circuit precedent.

WHEREFORE, Plaintiff LINDA MARIE COURTER A/K/A LINDA COURTER, respectfully requests that this Honorable Court enter judgment in her favor as follows:

a. Declaring that the practices complained of herein are unlawful and violate the aforementioned bodies of law;

b. Awarding Plaintiff statutory damages of $1,000.00 to be paid by Defendant as provided under 15 U.S.C. §1692k(a)(2)(A);

c. Awarding Plaintiff costs and reasonable attorney fees to be paid by Defendant as provided under 15 U.S.C. §1692k(a)(3);

d. Enjoining Defendant from further contacting Plaintiff or engaging in any further attempts to collect on this judgment debt; and

e. Awarding any other relief as this Honorable Court deems just and appropriate.

## COUNT II – VIOLATIONS OF THE TEXAS DEBT COLLECTIONS

56. Plaintiffs restate and reallege paragraphs 1 through 55 as though fully set forth herein.

57. Plaintiff is a "consumer" as defined by Tex. Fin. Code Ann. § 392.001(1).

58. Defendant is a "debt collector" as defined by Tex. Fin. Code Ann. § 392.001(6).

59. The subject debt is a "consumer debt" as defined by Tex. Fin. Code Ann. § 392.001(2) as it is an obligation, or alleged obligation, arising from a transaction for personal, family, or household purposes.

### a. Violations of TDCA § 392.304

60. The TDCA, pursuant to Tex. Fin. Code. § 392.304(19), prohibits a debt collector from "using any . . . false representation or deceptive means to collect a debt or obtain information

concerning a consumer."

61. Defendant violated § 392.304(19), by illegally reopening of Plaintiff's closed checking account in order to seize funds it had no legal authority to seize and by unfairly attempting to collect money it was not permitted to collect by law.

62. Defendant used deceptive and false representations in order to seize Plaintiff's assets to which it had no right.

WHEREFORE, Plaintiff LINDA MARIE COURTER A/K/A LINDA COURTER, respectfully requests this Honorable Court enter judgment in her favor as follows:

a. Declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

b. Entitling Plaintiff to injunctive relief pursuant to Tex. Fin. Code Ann. § 392.403(a)(1);

c. Awarding Plaintiff actual damages, pursuant to Tex. Fin. Code Ann. § 392.403(a)(2);

d. Awarding Plaintiff punitive damages, in an amount to be determined at trial, for the underlying violations;

e. Awarding Plaintiff costs and reasonable attorney fees, pursuant to Tex. Fin. Code Ann. § 392.403(b); and

f. Awarding any other relief as this Honorable Court deems just and appropriate.

Dated: January 25, 2021         Respectfully submitted,

s/ Nicholas C. Wajda  (Lead Attorney)
Nicholas C. Wajda, Esq. #24106757
Counsel for Plaintiffs
Admitted in the Southern District of Texas
Recovery Law Group/Wajda & Associates
10000 North Central Expressway, Suite 400
Dallas, Texas 75231
(888) 297-6203 (phone)
(866) 286-8433 (fax)
nick@wajdalawgroup.com